CULLEN AND DYKMAN, LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
Bonnie L. Pollack, Esq. (BP 3711)

Attorneys for Ridgewood Savings Bank

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:                                                          Chapter 11
                                                                Case No. 10-24368 (RDD)
Ardsley Village Square, Inc.,

                                Debtor.
-----------------------------------------------------------X

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on March 1, 2011 at 10:00 a.m., Ridgewood Savings Bank ("Ridgewood"), by and through its attorneys Cullen and Dykman LLP, will move (the "Motion") before the Honorable Robert D. Drain, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 10601, or as soon thereafter as counsel can be heard, for an Order granting Ridgewood relief from the automatic stay and/or dismissing the Debtor's case or, in the alternative, for an Order granting Ridgewood adequate protection.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-182 which can be found http://www.nysb.uscourts.gov, the

official website of the Bankruptcy Court, by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and shall be served in accordance with General Order M-182 upon (i) Cullen and Dykman LLP, 100 Quentin Roosevelt Blvd, Garden City, New York 11530, attention: Bonnie L. Pollack, Esq. and (ii) the Office of the United States Trustee, 33 Whitehall Street, 21st Street, New York, New York 10004, in order that they be received no later than February 22, 2011 at 4:00 p.m..

Dated: Garden City, New York
December 20, 2010

                        CULLEN AND DYKMAN LLP
                        Attorneys for Ridgewood Savings Bank

By:    s/Bonnie L. Pollack
       Matthew G. Roseman (MR1387)
       Bonnie L. Pollack (BP 3711)
       100 Quentin Roosevelt Boulevard
       Garden City, New York 11530
       (516) 357-3700

CULLEN AND DYKMAN, LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
Bonnie L. Pollack, Esq. (BP 3711)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:                                                      Chapter 11
                                                            Case No. 10-24368 (RDD)
Ardsley Village Square, Inc.,

                                Debtor.
-----------------------------------------------------------X

## MOTION BY RIDGEWOOD SAVINGS BANK FOR RELIEF FROM THE AUTOMATIC STAY AND/OR TO DISMISS DEBTOR'S CASE OR, IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION

To the Honorable Robert D. Drain, United States Bankruptcy Judge:

Ridgewood Savings Bank ("Ridgewood"), by and through its attorneys Cullen and Dykman LLP, as and for its motion for relief from the automatic stay and/or to dismiss the Debtor's case or, in the alternative, for adequate protection, respectfully alleges as follows:

### INTRODUCTION

1.      On November 12, 2010 (the "Petition Date"), Ardsley Village Square, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York.

2.      No trustee, examiner or creditor's committee has been formed or appointed in the Debtor's case, and the Debtor remains in possession of its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core matter pursuant to 28 U.S.C. §§ 157(b) (2)(A), (G) and (O).

## **BACKGROUND**

4. The Debtor is the owner of certain property located at 708 Saw Mill River Road, Ardsley, New York and 12 Center Street, Ardsley, New York (the "Property").

5. Prior to January 12, 2007, Ridgewood was the holder of certain mortgages against the Property, taken by assignment from other mortgagees, in the then–outstanding aggregate principal amount of approximately $1,347,583, as set forth on Exhibit "A" hereto (the "Original Mortgages").

6. On January 12, 2007, Ridgewood made an additional loan to the Debtor in the amount of $752,412.33, secured by an additional mortgage against the Property (the "Gap Mortgage").

7. On January 12, 2007, Ridgewood and the Debtor executed a Mortgage Consolidation, Modification and Security Agreement consolidating the Original Mortgages and the GAP Mortgage (collectively, the "First Mortgage") into one Note and Mortgage in the principal amount $2,100,000, together with an Amended, Consolidated and Restated Mortgage Note and a Restated Mortgage, Security Agreement and Assignment of Rents. Copies of the Consolidation, Modification and Security Agreement, the Restated Mortgage Note and the Restated Mortgage are annexed hereto as Exhibits "B", "C" and "D" respectively.

8. At the same time, the Debtor executed an Assignment of Leases and Rents in favor Ridgewood in connection with the First Mortgage. A copy of the Assignment of Leases and Rents is annexed hereto as Exhibit "E".

9. On or about November 28, 2007, Ridgewood made another loan to the Debtor in the amount of $200,000, which loan was also secured by a mortgage against the Property (the "Revolving Credit Line Mortgage"; together with the First Mortgage, the "Mortgage"), together with a Revolving Credit Line Note and Credit Agreement. Copies of the Revolving Credit Line Mortgage, Note and Credit Agreement are annexed hereto as Exhibits "F", "G" and "H" respectively.

10. At the same time, the Debtor executed an Assignment of Leases and Rents in favor Ridgewood in connection with the Revolving Credit Line Mortgage. A copy of the Assignment of Leases and Rents is annexed hereto as Exhibit "I".

11. On July 17, 2009, Ridgewood commenced an action to foreclose the Mortgage based on the Debtor's default in the payment of the First Mortgage since March 1, 2009 and the Second Mortgage since April 15, 2009.

12. On March 1, 2010, an Order of Summary Judgment in favor of Ridgewood was entered in the foreclosure action. On that date, an Order was entered appointing Desmond C.B. Lyons, Esq., as receiver of the Property[1]. Copies of the Order Granting Summary Judgment and Order Appointing the Receiver are annexed hereto as Exhibits "J" and "K", respectively.

13. A Judgment of Foreclosure and Sale was entered on September 23, 2010, a copy of which is annexed as Exhibit "L", and the foreclosure sale of the Property was scheduled for November 13, 2010. On November 12, 2010, on the eve of the foreclosure sale, the Debtor filed its chapter 11 bankruptcy case, thereby staying the sale.

---

[1] Although the receiver was appointed in March, he had just taken control of the Property in October and has never received any rents.

14. As of the Petition Date, Ridgewood was due the amount of approximately $2,933,587.73 in connection with both Mortgages (the "Ridgewood Debt").

15. The Debtor is presently required to make payments of principal, interest and escrow to Ridgewood in the amount of $19,829 per month in connection with the First Mortgage, and payments of $702.44 per month in connection with the Second Mortgage.

16. For the reasons set forth below, Ridgewood submits that cause exists to vacate the automatic stay to permit it to proceed with the foreclosure action and/or to dismiss this case. Alternatively, Ridgewood should be granted adequate protection of its security interest in the Property in addition to the monthly payments to which it is entitled.

## **RIDGEWOOD IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY**

17. Section 362 of the Bankruptcy Code provides for a broad stay of acts to collect debts against the debtor or to affect property of the estate. Under section 362(d)(2) of the Bankruptcy Code, however, the Court shall grant relief from the automatic stay of an act against property if the debtor does not have equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). Such grounds to vacate the stay exist in this case.

18. Here, the Debtor's schedules indicate that the value of the Property amounts to a total of $1,500,000. While Ridgewood performed an appraisal of the Property which indicated a total value of $2,430,000 as of August, 2010 (see, Exhibits "M" and "N" annexed hereto), even that higher value is still below the Ridgewood Debt

of $2,933,587.73. The Debtor clearly has no equity in the Property under either party's valuation.

19. Moreover, Ridgewood does not believe that the Property is necessary for an effective reorganization. Although undoubtedly the Debtor will argue that since this is a single asset case, reorganization cannot be achieved without the Property, the Debtor must nevertheless demonstrate that it has a reasonable prospect of reorganization. What is required under section 362(d)(2) "is not merely showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means...that there must be 'a reasonable possibility of a successful reorganization within a reasonable time period'". United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 375-6 (1988) (citations omitted) (emphasis in original); see also, In re Pegasus Agency, Inc., 101 F.3d 882, 886 (2d. Cir. 1996). "It goes without saying that an effective reorganization cannot be based solely on speculation". In re Kent Terminal Corp., 166 B.R. 555, 562 (Bankr. S.D.N.Y. 1994), citing In re Saypol, 31 B.R. 796, 803 (Bankr. S.D.N.Y. 1983). "Mere dreams" of a reorganization cannot sustain the automatic stay. In re New Era Co., 125 B.R. 725, 730 (Bankr. S.D.N.Y. 1991).

20. In In the Matter of Anchorage Boat Sales, Inc., 4 B.R. 635 (Bankr. E.D.N.Y. 1980), the Court found that the debtor's property was not necessary to an effective reorganization because there was no possibility of an effective reorganization. In that case, nothing in the record indicated that the debtor was able to generate sufficient revenues to meet its obligations nor did the debtor have an outside source of funds which would enable it to finance a plan. Thus, the Court concluded that the debtor's

5

encumbered property was not essential because there was no possibility that it could reorganize, and that the stay should be lifted to allow the lender to proceed to foreclose on its security interest. Anchorage Boat Sales, 4 B.R. at 641; see also In the Matter of Boca Development Associates, 21 B.R. 624, 630 (Bankr. S.D.N.Y. 1982) (among other things, there was no proof that financing will be available for a plan. The Debtor, therefore, did not establish that an effective reorganization was likely.).

21. In this case, as in the ones cited herein, the Debtor has no reasonable prospect of reorganization within a reasonable period of time. Annexed hereto as Exhibit "O" are the most recent rent rolls for the Property as received from the Debtor. As set forth thereon, the monthly rents received generated from the Property amounts to $20,640 per month. According to the Debtor, its monthly expenses to operate the Property (consisting of insurance, water, heat and certain electric charges but not including debt service to Ridgewood), amounts to approximately $1,970, leaving a surplus before debt service of $18,670. However, the debt service payments to Ridgewood total approximately $20,531 per month, and rents received from the Property are therefore insufficient to cover even the monthly debt service to Ridgewood. Moreover, the Debtor's expense amounts do not include ongoing administrative costs of the chapter 11 case including without limitation, Untied States Trustee fees, court filing fees, attorney's fees and expenses, and other professional fees and expenses which will be incurred by the Debtor. Thus, the Debtor will be administratively insolvent.

22. Nor does Debtor's expense amount cover tax payments which must be made by the Debtor post-petition. The Debtor has not paid any taxes with respect to the Property since the time of its default and Ridgewood continues to make payment on the

taxes. The next tax payment is due on January 1, 2011 in the estimated amount of approximately $20,022.25. It is unclear where the Debtor intends to obtain the funds to make that payment and Ridgewood believes that it will be unable to do so.

23. Accordingly, the Debtor is hard pressed to seriously argue that it has an ability to reorganize and Ridgewood submits that the Property is not necessary for an effective reorganization since there is no reasonable change of reorganization to begin with.

24. Ridgewood is mindful that the Property is occupied and that innocent tenants are caught in the wake of the Debtor's default and inability to reorganize. Ridgewood has no intention to remove tenants from the Property (other than for non-payment of rent) and intends to honor all leases at the Property. Ridgewood further intends to make sure that all tenants' services are provided to them as they have been during the foreclosure proceedings. Tenants will therefore not be harmed by the vacature of the stay in this case.

25. Based on the foregoing, Ridgewood believes that grounds exist under section 362(d)(2) of the Bankruptcy Code to vacate the automatic stay to permit Ridgewood to continue its foreclosure action.

## THE COURT SHOULD DISMISS THE DEBTOR'S CASE

26. Grounds also exist to dismiss this case pursuant to section 1112(b)(1) of the Bankruptcy Code, which provides that the Court may dismiss a chapter 11 case for "cause". This case should be dismissed as having been filed in bad faith. While there is nothing "inherently unacceptable" about filing a bankruptcy petition to block foreclosure, "a debtor must commit to a 'legitimate effort of reorganization' . . . However, 'when a

bankruptcy case has been filed only for the purpose for inhibiting or forestalling a foreclosure action on the debtor's assets without the intention of financial rehabilitation, the case should be dismissed as having been filed in bad faith.'" In re Tornheim, 239 B.R. 677, 686 (Bankr. E.D.N.Y. 1999), citing In re Earl, 140 B.R. 728, 739 (Bankr. N.D. Ind. 1992).

27. In the case of In re Phoenix Piccadilly, Ltd., 849 F.2d 1393 (11th Cir. 1988), in determining whether bad faith existed for the purposes of both dismissal and vacature of the automatic stay, the Court found that:

> there is no particular test for determining whether a debtor has filed a petition in bad faith. Instead, the courts may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, factors which evidence that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights."

Phoenix Piccadilly, 849 F.2d at 1394, citing In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1987).

28. Thus, the Court found that "many of the circumstantial factors which have been identified by the courts is evidencing a bad faith filing" were present in that case. The factors identified were:

    (i) The Debtor has only one asset, the Property . . . ;

    (ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;

    (iii) The Debtor has few employees;

    (iv) The Property is the subject of a foreclosure action as a result of arrearages on the debt;

(v) The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Action; and

(vi) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.

Id. at 1394-5 (citations omitted); See also 9281 Shore Rd. Owners Corp. v. Seminole Realty Corp. (In re 9281 Shore Rd. Owners Corp.), 187 B.R. 837, 848 (E.D.N.Y. 1995); In re East-West Associates, 106 B.R. 767, 772 (S.D.N.Y. 1989).

29. Application of the foregoing factors requires a determination that the instant petition was filed in bad faith. First, this is a single asset case, the only asset being the Property. While the Debtor has scheduled unsecured debts of $10,800, such debt pales in comparison to the Ridgewood Debt. Moreover, the Debtor has no employees (or at least stated it will have no payroll in its Rule 1007 Affidavit).

30. The Property was subject to a foreclosure action at the time of the filing of the bankruptcy case and the Debtor's problems involve a dispute solely between it and Ridgewood which can, and should, be resolved in the foreclosure action.

31. Finally, the timing of the filing clearly evidences an intent to delay and frustrate Ridgewood efforts to enforce its rights. Accordingly, Ridgewood submits that the totality of the circumstances provide substantial grounds for a finding that this case was filed in bad faith, and are the exact factors which evidence an "intent to abuse the judicial process and the purposes of the reorganization provisions" considered by the courts in determining whether a filing is in bad faith. Ridgewood submits, therefore, that grounds exist to dismiss this case under section 1112(d)(1) of the Bankruptcy Code.

## ALTERNATIVELY, RIDGEWOOD SHOULD BE GRANTED ADEQUATE PROTECTION

32. If the Court is not inclined to grant relief from the automatic stay or dismiss the case, Ridgewood is entitled to adequate protection of its security interest in the Property. Although the term "adequate protection" is not defined in the Bankruptcy Code, section 361 of the Bankruptcy Code provides examples of what might constitute such adequate protection, including periodic cash payments to the extent necessary to compensate for any decrease in the value of Ridgewood's interest in the Property, granting additional replacements liens to Ridgewood or granting Ridgewood "the indubitable equivalent" of its interest in the Property.

33. Since the Debtor has no other property in which to grant Ridgewood a replacement lien and there is no equity cushion in the Property, Ridgewood submits that, if the stay is not vacated or the case dismissed, the Debtor should be directed to make adequate protection payments to Ridgewood in addition to the post-petition payments to which it is entitled. Only then can Ridgewood be compensated for the diminution in the value of the Property.

## CONCLUSION

34. As discussed above, Ridgewood believes that the facts of this case establish cause to either vacate the automatic stay to permit Ridgewood to continue with its foreclosure action and/or to dismiss this bankruptcy case. Alternatively, if the Court is not inclined to either vacate the stay or dismiss the case, Ridgewood is entitled to adequate protection of its liens against the Property in addition to the regular post-petition payments to which Ridgewood is entitled.

35. No prior request for the relief sought herein has been made to this or any other Court.

WHEREFORE, Ridgewood respectfully requests that the Court grant the relief sought herein, together with such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
December 20, 2010

                        CULLEN AND DYKMAN LLP
                        Attorneys for Ridgewood Savings Bank

              By:    s/Bonnie L. Pollack
                      Matthew G. Roseman (MR1387)
                      Bonnie L. Pollack (BP 3711)
                      100 Quentin Roosevelt Boulevard
                      Garden City, New York 11530
                      (516) 357-3700